{¶ 13} I respectfully, but vigorously dissent because the majority fails to consider the legal effect of the 1983 lease the parties executed. By ignoring the lease, the majority erroneously concludes that "Samsa's yearly lease was converted into a month-to-month lease in May 1991" and he became a holdover tenant in November 2002. Majority Op. at 4. The express terms of the lease, however, do not support the majority's conclusion.
 {¶ 14} The lease explains how it is renewed and how it can be terminated. The lease, in pertinent part, imposes the following terms and conditions upon both parties:
 {¶ 15} * * * this agreement shall automatically renew itself * * * for periods of one year from the expiration date of the original term of this lease, unless either party shall give to the other not less than Forty-Five (45) days written notice prior to the expiration of the term then running of their intention to terminate said tenancy at the expiration of the then existing term, which notice shall be in writing and sent by normal mail channels.
 {¶ 16} * * *
 {¶ 17} * * * This lease shall not be changed or modified except by written instrument signed by the parties hereto.
 {¶ 18} The lease is clear and unambiguous. It will automatically renew every year beginning in May 1983, until one of the parties provides the other with written notice of their intention to terminate the annual lease no later than March 17th of any given year. Moreover, if either party intends to give notice of termination, that notice must be in writing and sent by normal mail channels. Such notice is not in the record.
 {¶ 19} On September 4, 2002, defendant slipped its notice to vacate under Samsa's apartment door. Under the terms of the lease, the notice is untimely and the form of delivery improper because it was not delivered through the mail as required.
 {¶ 20} It is true that Samsa stated in his deposition that he had a month-to-month tenancy starting in May 1991. Samsa's statement, however, is not enough to warrant granting summary judgment in plaintiff's favor. First, Samsa, a lay witness, cannot proffer a legal conclusion. Byrley v. Nationwide LifeIns. Co. (1994), 94 Ohio App.3d 1, 640 N.E.2d 187; Deck v.Wellston City Schs., (Mar. 10, 1997), Jackson App. No. 96 CA 788. His attorney, moreover, expressly disputes the lease validly converted to a month-to month tenancy. Second, Samsa never waived his right to review and sign the deposition and he never signed the deposition. Additionally, the court reporter failed to provide her signature as required under Civ.R. 30(E) in the event "the deposition is not signed by the witness * * *."
 {¶ 21} Regardless of what Samsa may have believed or what plaintiff argues, however, the lease expressly prohibits any modification of the annual lease term absent a signed writing by both parties. There is no such writing in the record. Nor does either party assert they mutually agreed to waive the lease terms and to conduct themselves on a month-to-month basis. In either case, these issues cannot be resolved on summary judgment.
 {¶ 22} The pressing question in this case is whether the conflicting pieces of evidence can be sufficiently reconciled to support summary judgment for plaintiff. I think not.
 {¶ 23} Without a written and mutual modification of the lease and without a signed or properly verified deposition, reasonable minds could conclude that the 1983 lease has automatically renewed itself every year on May 1st since 1983. There is not enough in the record to resolve this issue.
 {¶ 24} Finally, but certainly not least, the record reveals another compelling question of material fact, namely, whether the landlord continued to accept rent from Samsa after it purportedly terminated his tenancy. If so, the landlord has waived its argument that Samsa was ever a holdover tenant. AssociatedEstates Corp. v. Bartell (1985), 24 Ohio App.3d 6,492 N.E.2d 841.
 {¶ 25} If, arguendo, the deposition is admitted, then Exhibit A would be part of the record. It is a chronology of notes he kept about his apartment since 2002. In that exhibit is an entry stating that Samsa received a "resident account number" and that he is to record that number on his future rent checks. On November 2, 2002, Samsa records delivery of his November rent to the management office. Later, on December 3, 2002, Samsa pays his December 2002 rent again to the management office. That entry states that the assistant property manager "accepts check." There is nothing in the record contradicting either of these entries. If Samsa tendered November and December 2002 rent and both of those payments were accepted by defendant, then plaintiff's claim that Samsa was a holdover tenant is moot.
 {¶ 26} For all the foregoing reasons, I would reverse the trial court granting summary judgment to plaintiff. On the record before this court, a jury is best suited to decide the term of Samsa's tenancy and whether Samsa was ever a holdover tenant either on the basis of the lease or defendant's acceptance of his rent payments after it had given him notice that his lease would be terminated.